RON BENDER (SBN 143364)
JULIET Y. OH (SBN 211414)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: RB@LNBYB.com, JYO@LNBYB.com, LLS@LNBYB.com

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>TATUNG COMPANY OF AMERICA, INC.,<br><br>Debtor. | Case No. 2:19-bk-21521-NB<br><br>Chapter 11<br><br>**APPLICATION OF DEBTOR AND DEBTOR IN POSSESSION TO EMPLOY SIX DEGREES LAW GROUP AS SPECIAL CORPORATE COUNSEL; DECLARATION OF EDGAR PARK, ESQ. IN SUPPORT THEREOF**<br><br>Hearing:<br>Date: November 5, 2019<br>Time: 1:00 p.m.<br>Place: Courtroom 1545<br>      255 East Temple Street<br>      Los Angeles, California, 90012 |

1

Tatung Company of America, Inc. (the "Debtor"), the debtor and debtor in possession in the above-captioned bankruptcy case, hereby submits this application (the "Application") for Court approval of its employment of Six Degrees Law Group ("SD") as special corporate counsel, effective as of September 30, 2019, the date of the Debtor's bankruptcy filing. In support of this Application, the Debtor respectfully represents as follows:

A.      **Descriptions Of The Debtor And Its Business.**

1.      On September 30, 2019, the Debtor commenced this bankruptcy case by filing a Voluntary Petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has operated its business and managed its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      The Debtor is a privately held California corporation headquartered in Long Beach, California that specializes in the manufacturing and distribution of consumer electronics, appliances and related products. Founded in 1972, the Debtor has been innovating technological solutions for home and commercial settings for over 40 years. The Debtor provides its products to both consumer and commercial markets and, over the years, the Debtor has expanded its market scope to provide world-class products and services to the industrial and educational sectors.

3.      The Debtor is predominantly a business-to-business (B2B) enterprise, and manufactures and distributes a variety of display products to the gaming, educational, and security industries. The Debtor has successfully brought to market security solutions for distributors and integrators, hotel lodging products for hotel suppliers, and kitchen appliances, such as rice cookers and air fryers, for e-commerce, storefronts, and grocery stores.

4.      In addition to products serving the consumer and commercial markets, the Debtor provides manufacturing services and tech-solutions for some of the leading PC system manufacturers and original equipment manufacturers (OEM) around the world. The Debtor's offerings also include third-party logistics and procurement services to individuals and corporate customers globally.

///

**B.     Events Leading To The Filing Of The Debtor's Chapter 11 Case.**

5.     The Debtor generated net sales of $45,518,999 in 2017, and $38,580,256 in 2018. Despite all of its success, the Debtor's business has declined over the past year due to the impact that the strain in China-United States trade relations has had on the Debtor's industry.

6.     In addition to the negative impact that the strain in China-United States trade relations has recently had on the Debtor's business, the Debtor is currently facing a very large liability arising from defaults under a three-party settlement agreement (the "Settlement Agreement") entered into in September, 2018 by the Debtor, Hemlock Semiconductor Operations LLC ("Hemlock"), and Green Energy Technology, Inc., Ltd. ("GET"). GET is a publicly traded company in Taiwan which was at one time the largest solar cell technology producer in Taiwan. In 2011, GET entered into a Long-Term Supply Agreement with Hemlock (the "Original Supply Agreement"), pursuant to which GET agreed to purchase polysilicon from Hemlock to be used to manufacture its solar products. GET requested that the Debtor provide procurement services as an agent for GET in connection with the Original Supply Agreement, and Hemlock required the Debtor to be added as a party to the Original Supply Agreement.

7.     The Debtor itself does not manufacture solar products, nor does it use polysilicon in its business. In 2017 and 2018, the Debtor earned nominal revenue from the sale of solar products. The Debtor's economic interest in the Original Supply Agreement with Hemlock was but a small fraction compared to that of GET. As procurement agent, and under its arrangement with GET, the Debtor stood to earn only up to 0.35% of the total purchase amount of the polysilicon purchased by GET from Hemlock, for the shipping, handling and logistics services that the Debtor was to provide; however, the Debtor never actually received any fees for such services.

8.     Within approximately four months, Hemlock alleged that GET had breached the terms of the Original Supply Agreement due to a market-wide crash in the price of

polysilicon, and Hemlock eventually commenced litigation against GET and the Debtor. The parties negotiated a resolution of their disputes and entered into the Settlement Agreement, pursuant to which GET and the Debtor agreed to enter into a replacement supply agreement with Hemlock (the "Replacement Supply Agreement") and to make settlement payments to Hemlock totaling $35,000,000 over a period of ten years. Since the Debtor, as procurement service agent, was a party to the Original Supply Agreement, Hemlock insisted that the Debtor be an obligor under the Replacement Supply Agreement and the Settlement Agreement. At all times, the Debtor relied on GET to satisfy all of the financial obligations under the Original Supply Agreement, the Replacement Supply Agreement and the Settlement Agreement, and it was always the understanding of the Debtor and GET that GET would satisfy all of the financial obligations under the Original Supply Agreement, the Replacement Supply Agreement and the Settlement Agreement.

9. Pursuant to the Settlement Agreement, the first settlement payment of $5,000,000 was required to be paid to Hemlock by January 31, 2019. Although the Settlement Agreement provided for GET and the Debtor to be jointly and severally liable for the settlement payments owing under the Settlement Agreement, given the Debtor's very limited role in the transactions contemplated by the Original Supply Agreement and the Replacement Supply Agreement and the size and profitability of the Debtor's business, as indicated above, it was always the understanding of the Debtor and GET that GET would satisfy all of the financial obligations under the Original Supply Agreement, the Replacement Supply Agreement and the Settlement Agreement.

10. Shortly after entering into the Settlement Agreement and Replacement Supply Agreement, GET's financial condition worsened and it was not able to make the first settlement payment to Hemlock as required by January 31, 2019.

11. In June 2019, Hemlock demanded that GET and the Debtor make payments under the Settlement Agreement. GET was unable to make any payment and, in July 2019,

Hemlock sent default notices to both GET and the Debtor. Thereafter, as an insolvent entity, GET entered into liquidation proceedings in Taiwan.

12. Since that time, and with GET apparently unable to contribute towards any resolution given its pending liquidation proceedings, the Debtor has attempted to negotiate a reasonable and economically feasible and affordable settlement with Hemlock that would enable the Debtor to remain an economically viable entity preserving its going concern business and the jobs of its employees. The parties have unfortunately not been able to reach any settlement that would make economic sense or be affordable for the Debtor as Hemlock did not respond to the Debtor's settlement offers, and Hemlock's settlement demand has been completely unreasonable and has been far in excess of the Debtor's total asset value.

13. To help address the Debtor's financial difficulties and to assist the Debtor to navigate through a restructuring process, shortly before the Petition Date, the Debtor revamped its senior management team and retained a financial consulting firm, E&W Consulting LLC ("E&W"), to provide a talented Chief Restructuring Officer (Jason Chen) to serve as the Debtor's senior officer during the Debtor's chapter 11 bankruptcy proceeding. E&W will also provide the Debtor with additional resources to assist Mr. Chen as necessary. Subject to the approval of the Court, Mr. Chen and E&W will continue providing services to the Debtor post-petition and will report directly to the Debtor's Board of Directors. The Debtor anticipates that Mr. Chen will be guiding the Debtor through its chapter 11 bankruptcy case, ensuring the Debtor's compliance with the numerous reporting requirements for a debtor-in-possession, and providing extensive guidance in connection with the Debtor's operational affairs and restructuring efforts.

14. Through its chapter 11 bankruptcy case, the Debtor seeks to obtain "breathing room" from its creditors while it takes steps to address the Debtor's operational and financial difficulties and to implement the changes required to return the Debtor to profitability. The Debtor believes that this, in turn, will enable the Debtor to formulate and pursue confirmation of a viable plan of reorganization or pursue an alternative transaction which allows the Debtor to restructure its existing debt in a cohesive and efficient manner and to continue operating its longstanding business.

**C.    Employment of Corporate Counsel.**

15.    The Debtor seeks to employ SD as its special corporate counsel pursuant to 11 U.S.C. § 327(e), at the expense of the Debtor's bankruptcy estate, and to have the Debtor's employment of SD be deemed effective as of the Petition Date. The Debtor seeks to employ SD for the purpose of providing general corporate legal services, including with respect to corporate agreements, board and shareholder processes and routine employment matters. Further, to the extent requested by the Debtor, the Debtor seeks to employ SD to advise the Debtor on any business transactional and corporate governance issues of non-bankruptcy law related to the Debtor's current business formation and any restructuring of its business formation, including a sale of the Debtor's business, through a chapter 11 plan of reorganization or otherwise.

16.    Subsection 327(e) provides in pertinent part that a debtor in possession "may employ, for a specified special purpose . . . an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. §§ 327(e) and 1107. Prior to the Petition Date, SD was retained by the Debtor to represent the Debtor in connection with general corporate legal issues. As such, SD is familiar with and knowledgeable about the legal issues and factual record regarding the Debtor's business structure and corporate governance and would be able to aid the Debtor in any general corporate issues that arise during the pending of the Debtor's chapter 11 case. Moreover, as to legal expertise, Edgar Park, who is the attorney at SD that will be representing the Debtor, specializes in, among other things, corporate financing and organizational matters, corporate governance, mergers, sales and restructuring of private businesses. Accordingly, SD is appropriately qualified to represent the Debtor in these matters.

17.    The Debtor and SD believe and assert that the employment of SD is in the best interest of the estate. Furthermore, the Debtor and SD believe and assert that SD does not represent or hold any interest adverse to the Debtor or to the estate with respect to the proposed representation.

18. SD is well qualified to act as the Debtor's special corporate counsel. As set forth in more detail in the professional biography attached as Exhibit "1"" to the Declaration of Edgar Park (the "Park Declaration"), Mr. Park, who, as stated above, will be the attorney responsible for the representation of the Debtor in its corporate governance and business issues, has substantial experience and expertise in business formation, corporate governance, and corporate mergers and acquisitions. Mr. Park's hourly billing rate is $425. Paralegals at SD bill at an hourly rate of $100.

19. Prior to the Petition Date, the Debtor paid a retainer to SD in the amount of $40,000 in contemplation of and in connection with the Debtor's chapter 11 case (the "Retainer"). SD was advised by the Debtor that the source of payment of the Retainer was from the Debtor's funds. SD will place the unused portion of the Retainer as of the filing of the Debtor's bankruptcy petition into a segregated account and draw down from those funds on a monthly basis in accordance with the common procedures of this District to assist SD with its cash flow needs, recognizing that all post-petition fees and expenses paid to SD must be ultimately approved by the Court after notice and a hearing.

20. SD does not hold a pre-petition claim against the Debtor's estate. Therefore, SD is not a pre-petition creditor of the Debtor.

21. SD has not received any lien or other interest in property of the Debtor or of a third party to secure payment of SD's fees or expenses.

22. SD will seek Court authority to be paid from the Debtor's estate for any and all fees incurred and expenses advanced by SD during its representation of the Debtor. SD recognizes that the payment of any such fees and expenses will be subject to further Court order after notice and a hearing.

23. SD has not shared or agreed to share its compensation for representing the Debtor with any other person or entity, except among its members.

24. SD will provide monthly billing statements to the Debtor that will set forth the amount of fees incurred and expenses advanced by SD during the previous month.

25. SD understands the provisions of 11 U.S.C. §§ 327, 328, 330 and 331 which require, among other things, Court approval of the Debtor's employment of SD as special corporate counsel and of all legal fees and reimbursement of expenses that SD will receive from the Debtor and the Debtor's estate.

26. SD is not an equity security holder or an insider of the Debtor.

27. SD is not and was not an investment banker for any outstanding security of the Debtor. SD has not been within three years before the Petition Date an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

28. Neither SD nor any member of SD is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

29. SD submits that it does not hold or represent any interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker for any security of the Debtor, or for any other reason.

30. As further set forth in the Park Declaration, to the best of SD's knowledge, SD does not hold or represent any interest materially adverse to the Debtor or the Debtor's estate with respect to the matters for which SD is to be employed. Also, to the best of SD's knowledge, other than as set forth herein, SD has no prior connection with the Debtor, any creditors of the Debtor or its estate, or any other party in interest in this case, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

31. The Debtor believes that its employment of SD upon the terms and conditions set forth herein is in the best interest of the Debtor's estate.

**WHEREFORE**, the Debtor respectfully request that the Court approve the Debtor's employment of SD as its special corporate counsel, effective as of September 30, 2019 upon the terms and conditions set forth above.

Dated: October 15, 2019

TATUNG COMPANY OF AMERICA, INC.

_____
Name:  Jason Chen
Title:  Chief Restructuring Officer

                       LEVENE, NEALE, BENDER, YOO
                       & BRILL L.L.P.

                       By: */s/ Lindsey L. Smith*
                            Ron Bender
                            Lindsey L. Smith
                            Proposed Counsel for Chapter 11 Debtor and
                            Debtor in Possession

**DECLARATION EDGAR PARK, ESQ.**

I, Edgar Park, Esq., hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto. Capitalized terms not otherwise defined herein shall have the same meaning ascribed to such terms in the Application to which this Declaration is attached (the "Application").

2. I am a founder and principal of Six Degrees Law Group (SD). I am an attorney licensed to practice in the State of California.

3. The Debtor seeks to employ SD as its special corporate counsel pursuant to 11 U.S.C. § 327(e), at the expense of the Debtor's bankruptcy estate, and to have the Debtor's employment of SD be deemed effective as of the September 30, 2019. The Debtor seeks to employ SD for the purpose of providing general corporate legal services, including with respect to corporate agreements, board and shareholder processes and routine employment matters. Further, to the extent requested by the Debtor, the Debtor seeks to employ SD to advise the Debtor on any business transactional and corporate governance issues of non-bankruptcy law related to the Debtor's current business formation and any restructuring of its business formation, including a sale of the Debtor's business, through a chapter 11 plan of reorganization or otherwise.

4. Prior to the Petition Date, SD was retained by the Debtor to represent the Debtor in connection with general corporate legal issues. As such, SD is familiar with and knowledgeable about the legal issues and factual record regarding the Debtor's business structure and corporate governance and would be able to aid the Debtor in any general corporate issues that arise during the pending of the Debtor's chapter 11 case.

5. Moreover, as to legal expertise, I specialize in, among other things, corporate financing and organizational matters, corporate governance, mergers, sales and restructuring of private businesses. I will be the attorney at SD responsible for the representation of the Debtor. Accordingly, I believe that SD is appropriately qualified to represent the Debtor in these matters.

6. I believe and assert that SD does not represent or hold any interest adverse to the Debtor or to the estate with respect to the proposed representation.

7. Attached hereto as Exhibit "1" is a copy of my professional biography.

8. My hourly billing rate is $425. Paralegals at SD bill at an hourly rate of $100.

9. Prior to the Petition Date, the Debtor paid a retainer to SD in the amount of $40,000 in contemplation of and in connection with the Debtor's chapter 11 case (the "Retainer"). SD was advised by the Debtor that the source of payment of the Retainer was from the Debtor's funds. SD will place the unused portion of the Retainer as of the filing of the Debtor's bankruptcy petition into a segregated account and draw down from those funds on a monthly basis in accordance with the common procedures of this District to assist SD with its cash flow needs, recognizing that all post-petition fees and expenses paid to SD must be ultimately approved by the Court after notice and a hearing.

10. SD does not hold a pre-petition claim against the Debtor's estate. Therefore, SD is not a pre-petition creditor of the Debtor.

11. SD has not received any lien or other interest in property of the Debtor or of a third party to secure payment of SD's fees or expenses.

12. SD will seek Court authority to be paid from the Debtor's estate for any and all fees incurred and expenses advanced by SD during its representation of the Debtor. SD recognizes that the payment of any such fees and expenses will be subject to further Court order after notice and a hearing.

13. SD has not shared or agreed to share its compensation for representing the Debtor with any other person or entity, except among its members.

14. SD will provide monthly billing statements to the Debtor that will set forth the amount of fees incurred and expenses advanced by SD during the previous month.

///

///

///

15. SD understands the provisions of 11 U.S.C. §§ 327, 328, 330 and 331 which require, among other things, Court approval of the Debtor's employment of SD as special corporate counsel and of all legal fees and reimbursement of expenses that SD will receive from the Debtor and the Debtor's estate.

16. SD is not an equity security holder or an insider of the Debtor.

17. SD is not and was not an investment banker for any outstanding security of the Debtor. SD has not been within three years before the Petition Date an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

18. Neither SD nor any member of SD is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

19. SD submits that it does not hold or represent any interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker for any security of the Debtor, or for any other reason.

20. To the best of SD's knowledge, SD does not hold or represent any interest materially adverse to the Debtor or the Debtor's estate with respect to the matters for which SD is to be employed. Also, to the best of SD's knowledge, other than as set forth in the Application, SD has no prior connection with the Debtor, any creditors of the Debtor or its estate, or any other party in interest in this case, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 15th day of October, 2019, at Los Angeles, California.

_____
EDGAR PARK, ESQ., Declarant

# EXHIBIT "1"

## [BIOGRAPHY]

EDGAR D. PARK
100 Wilshire Boulevard, Suite 700
Santa Monica, California 90401

E X P E R I E N C E

**SIX DEGREES LAW GROUP** *Santa Monica, California*
*Founder* *August 2014 – Present*

Advises entrepreneurs on securities, corporate financing and organizational matters, corporate governance, mergers, sales and restructuring of private businesses, commercial agreements, shareholder agreements and transactions, executive compensation, equity compensation plans, intellectual property licensing, limited partnership and LLCs, EB-5 regional centers, pooled investment funds, and startup matters. Advises investors in private placements, structuring and formation of private (exempt) funds. Provides securities law compliance advice in a variety of contexts. Serves as external general counsel to a variety of private companies.

**RICHARDSON & PATEL, LLP** *Los Angeles, California*
*Senior Counsel, Corporate and Securities* *June 2005 – July 2014*

Extensively advised smaller reporting companies on 1934 Act compliance and registration of securities. Principal drafter of S-1 registration statements on behalf of issuers in IPOs, follow-on public offerings and secondary (resale) offerings, and principal drafter of private placement memoranda. Served as lead counsel for PIPEs, private placements, mergers and acquisitions, joint ventures and reverse mergers/alternative public offerings for public and private companies. Counseled management and boards of directors of public and private companies on Sarbanes-Oxley compliance, Section 13 and 16 reporting, FINRA compliance, equity compensation plans, intellectual property licensing, and general corporate matters. Advised on the structuring and formation of private (exempt) funds, EB-5 regional centers, pooled investment funds, and startup companies.

**MORRISON AND FOERSTER, LLP** *Sacramento, California*
*Associate, Corporate Finance* *June 2001 – June 2005*

Represented public and private companies in securities offerings, mergers and acquisitions (involving stock and assets, tender offers, going-private transactions), current and periodic reporting under the 1934 Act, exchange listing compliance, Section 16, corporate governance, Rule 10b-18 stock repurchases, joint ventures, technology licensing, equity compensation and commercial agreements. Structured, negotiated and documented investments on behalf of private equity funds and issuers, fund formation agreements and 1940 Act compliance; advised on equity compensation, non-competition, NDAs, LLC operating agreements, software and IP agreements.

**HELLER EHRMAN WHITE & MCAULIFFE, LLP** *Los Angeles, California*
*Summer Associate / Associate, Business Department* *Summer 1997 – May 2001*

Counseled a broad range of clients in entity formation (corporations and LLCs), seed round and venture capital financings, mezzanine and bridge financings, stock and asset based mergers and acquisitions, and initial and secondary public offerings. Drafted, negotiated and prepared deal documents for corporate finance and M&A transactions including acquisition agreements, disclosure schedules, regulatory filings (Blue Sky, SEC, HSR and Exon-Florio). Coordinated and conducted closings, due diligence reviews and legal research.

**U.S. SECURITIES AND EXCHANGE COMMISSION** *Los Angeles, California*
*Extern, Enforcement Division* *January 1997 – May 1997*

Investigated potential violations of federal securities laws and regulations, conducted legal research, and prepared legal memoranda to support civil and administrative actions by and proceedings of the SEC.

# EDUCATION

**UNIVERSITY OF SOUTHERN CALIFORNIA LAW SCHOOL, J.D. 1998**
*Southern California Law Review, Rethinking Rule 10b-5 Damages* (1998)
Admitted to California State Bar in December 1998

**YALE UNIVERSITY, B.A. in** *Ethics, Politics & Economics***, May 1994**
Senior Thesis: *The Role of American Business in Health Care Reform* (1994)
Varsity Golf Team, Yale Student Investment Group, Intramural Squash
Legislative Intern, U.S. House of Representatives, Energy and Commerce Committee

# PERSONAL INTERESTS AND AFFILIATIONS

Santa Monica Bar Association
Select Counsel
Triathlon (LA Triathlon Club, Tower 26, SCAQ), squash, golf and international travel
Yale Entrepreneurs & Investors Network, CalTech Forum, Digital LA

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document **APPLICATION OF DEBTOR AND DEBTOR IN POSSESSION TO EMPLOY SIX DEGREES LAW GROUP AS SPECIAL CORPORATE COUNSEL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 15, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender**    rb@lnbyb.com
- **Amir Gamliel**    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- **Jeffery D Hermann**    jhermann@orrick.com
- **Dare Law**    dare.law@usdoj.gov, ron.maroko@usdoj.gov;Alvin.mar@usdoj.gov
- **Juliet Y Oh**    jyo@lnbrb.com, jyo@lnbrb.com
- **Lindsey L Smith**    lls@lnbyb.com, lls@ecf.inforuptcy.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

2. **SERVED BY UNITED STATES MAIL**: On **October 15, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ *Service list served by U.S. Mail attached*

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 15, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 15, 2019 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |